1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   SOPHEAP CHITH,

11                    Petitioner,        CASE NO. 3:18-CV-5342-BHS-DWC

12        v.                             REPORT AND RECOMMENDATION

13   RON HAYNES,                         Noting Date: September 24, 2021

14                    Respondent.

15        The District Court has referred this action to United States Magistrate Judge David W.

16   Christel. Petitioner, proceeding *pro se* and *in forma pauperis*, brings this habeas corpus

17   proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the district judge

18   should deny the Amended Petition for Writ of Habeas Corpus (Dkt. 31) and dismiss this case

19   with prejudice.

20                          PROCEDURAL BACKGROUND

21   I.    Direct Appeals

22        The Washington Court of Appeals summarized the facts underlying Mickens' convictions as

23   follows:

24

On February 5, 2013, Mr. Chith stole a silver Honda Civic from the parking lot of a Puyallup apartment complex. Mr. Chith and his girlfriend, Tiffany LaPlante, drove the car to an apartment complex in Spanaway, where the pair joined Sothea Chum and Nicole Shoemaker; they began removing the Civic's tires before Mr. Chith left, fearing capture. People noticed Mr. Chith on the way to Spanaway. Gabriel Colbern sat at a red light at a busy intersection, waiting to turn left, when he saw Mr. Chith across the intersection. Mr. Chith stood outside the Civic, which was stopped at a red light. He appeared to be yelling at the person inside the car. When the light changed, Mr. Chith got back in his car and turned right, directly in front of Mr. Colbern's car. Mr. Colbern noted Mr. Chith was gesturing angrily at his passenger. Ms. LaPlante later told officers Mr. Chith was upset with her, got out of the car, returned, and head-butted her.

Mr. Colbern followed Mr. Chith, noting he drove erratically, weaving and fishtailing in and out of lanes. Mr. Colbern saw Mr. Chith fire two shots from the car, shattering the driver's side window, prompting Mr. Colbern to call the police. Mr. Colbern continued to follow Mr. Chith until he stopped in a center turn lane near a junior high school. Mr. Chith tried to wave Mr. Colbern past him, but Mr. Colbern stayed where he was. Mr. Chith then fired two or three shots at or near Mr. Colbern in an attempt to scare Mr. Colbern. Mr. Chith resumed driving, firing two more shots "just toward the neighborhood that was there." Report of Proceedings at 293-94. Mr. Chith drove on, running a red light. A school bus full of children hit Mr. Chith's car, loosening the rear bumper. Mr. Chith still continued to drive, however Mr. Colbern lost sight of the car. Mr. Colbern remained on the phone with the police during this time.

Anna Monroe saw Mr. Chith near a busy intersection as she drove home from work. She drove behind Mr. Chith, who was driving aggressively. She saw Mr. Chith extend his arm out the driver's window and fire two shots into the air. Ms. Monroe lost sight of Mr. Chith when his car turned left.

The State charged multiple crimes. A jury found Mr. Chith guilty of the following counts: (I) second degree assault with a firearm enhancement; (II) drive-by shooting; (III) unlawful possession of a stolen vehicle with a firearm enhancement; (IV) second degree unlawful possession of a firearm; (V) reckless driving; (VI) hit and run; (VII) third degree driving with a suspended license; (VIII) violation of a court order with a firearm enhancement; (IX) first degree
taking of a motor vehicle without permission with a firearm enhancement; and (X) witness intimidation with a firearm enhancement. The trial court dismissed count III, ruling it merged with count IX. The court sentenced Mr. Chith to concurrent standard range sentences on the felonies plus four firearm enhancements for a total sentence of 228 months. Without findings, the court ordered a substance abuse evaluation and treatment as a community custody condition. Mr. Chith appealed.

Dkt. 9 at 29-30.

1    Petitioner successfully appealed his conviction for witness intimidation, and the

2    Washington Supreme Court found imposition of a substance abuse condition during community

3    custody to be improper. *Id*. at 57-96, 170-179, 200.

4        Upon his first resentencing the trial court sentenced Petitioner to a total of 206 months of

5    confinement. *Id*. at 16. However, Petitioner once again successfully appealed, and the

6    Washington Court of Appeals found the sentences for second degree assault, drive-by shooting,

7    violation of a court order, and first degree taking a motor vehicle without permission exceeded

8    their statutory maximums, and therefore reversed those sentences. *Id*. at 202-217, 277-285. The

9    Washington Court of Appeals also ordered the trial court to vacate the possession of a stolen

10   vehicle conviction and correct several scrivener's errors, then resentence Petitioner on the

11   remaining counts. *Id*.

12       Upon his second resentencing, the trial court reduced the base sentence for the drive-by

13   shooting conviction from 116 months to 114 months, followed by six months of community

14   custody, for a total corrected sentence of 202 months of confinement. *Id*. 2-4. Petitioner once

15   again appealed the new judgment and sentence to the Washington Court of Appeals, which

16   affirmed the new judgment and sentence. *Id*. at 290; Dkt. 33 at 292-303. Petitioner then appealed

17   to the Washington Supreme Court, raising the following issues:

18       1. A sentencing court errs when it operates under a mistaken belief that it does not
            have the discretion to impose an exceptional mitigated sentence for which a

19          defendant may be eligible. Under *State v. McFarland,* a court may impose
            concurrent sentences for firearm-related convictions as an exceptional

20          mitigated sentence despite statutory language directing consecutive sentences.
            Is remand for resentencing required where the court believed it was required to

21          impose consecutive sentences for multiple firearm enhancements?

22       2. Chith has a Sixth Amendment right to effective assistance of counsel at
            sentencing. A defendant who is denied the effective assistance of counsel at

23          sentencing is entitled to remand for a new sentencing hearing. Is remand for

24

resentencing required where defense counsel failed to seek an exceptional mitigated sentence under McFarland?

Dkt. 33 at 305-319. The Washington Supreme Court denied review. *Id*. at 335.

II.    Personal Restraint Petitions

Petitioner filed a personal restraint petition, which the Washington Court of Appeals denied. Dkt. 9 at 292-432; Dkt. 9-1 at 60-1. He then sought relief from the Washington Supreme Court, raising the following issues:

1. Whether the Acting Chief Judge erred when ruling on what constituted Prosecutorial Misconduct in the case, in consideration of this court's decisions in Glasmann, and Walker?

2. Whether the Acting Chief Judge erred in deciding what amounted to "impermissible vouching" for a witness in this case?

3. Whether the Acting Chief Judge erred in deciding whether the prosecutor in this case, trivialized the state's burden under the 'reasonable doubt' standard? And also whether the prosecutor quantified the burden of proof?

Dkt. 9-1 at 63-83. The Commissioner of the Washington Supreme Court denied review, and also denied Petitioner's Motion for Modification. Dkt. 9-1 at 85-90, 112. Petitioner then filed a second Personal Restraint Petition with the Washington Court of Appeals, which was ultimately transferred to the Washington Supreme Court as an Amended Personal Restraint Petition. *Id*. at 131-242; Dkt. 33 at 337-353**;** 606-607.

The Amended Personal Restraint Petition presented the following issues:

1. Mr. Chith should be given a new trial or released from confinement pursuant to RAP 16.4(c)(2) because the state's evidence failed to prove every element of second degree assault beyond a reasonable doubt.

2. Mr. Chith should be given a new trial or released from confinement pursuant to RAP 16.4(c)(2) because the state's evidence failed to prove every element of unlawful possession of a firearm in the second degree beyond a reasonable doubt.

3.  Mr. Chith should be given a new trial or released from confinement pursuant to RAP 16.4(c)(2) because he was denied effective assistance of counsel regarding the second degree assault change due to counsel's failure to propose an instruction for the lessor included offense of unlawful display of a weapon.

4.  The firearm enhancements must be vacated due to instructional error that omitted an essential element and because insufficient evidence supported the special verdicts [.]

5.  There was insufficient evidence to support the imposition of the firearm sentencing enhancements where the State failed to prove that Mr. Chith was armed with a firearm[.]

Dkt. 33-1 at 337-353. The Commissioner of the Washington Supreme Court rejected the claims and dismissed the petition. *Id*. at 609-613. Petitioner filed a Motion to Modify, which the Washington Supreme Court denied without comment. *Id*. at 615-630, 632. The Washington Supreme Court issued a certificate of finality on August 18, 2020. *Id*. at 634.

III.    Amended Petition for Habeas Corpus

In his Amended Petition for Writ of Habeas Corpus Petitioner presents the following nine grounds for relief:

Ground One: Using Chith's Booking Photo encroached on his presumption of innocence, in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

Ground Two: The Prosecution Misconduct [sic] during closing argument when he impermissibly vouched for a key witness, Ms. LaPlante, in violation of Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution.

Ground Three: The Prosecution committed misconduct and denied Mr. Chith a fair trial by stating Mr. Chith was guilty during its power point presentation, in violation of the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution.

Ground Four: Mr. Chith was denied a fair trial when the prosecutor trivialized the burden of proof by using a puzzle analogy, in violation of Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution.

1
2
Ground Five: The state's evidence was insufficient to prove every element of second degree assault, in violation of the Fourteenth Amendment of the U.S. Constitution.

3
4
Ground Six: The state failed to prove every element of Second Degree Unlawful Possession of a Firearm in violation of the Fourteenth Amendment of the U.S. Constitution.

5
6
7
Ground Seven: The firearm enhancements must be vacated due to instructional error that omitted an essential element and because insufficient evidence supported the special verdicts, in violation of the Fourteenth Amendment of the U.S. Constitution.

8
9
Ground Eight: The sentencing court erred in failing to address imposition of concurrent firearm enhancements, in violation of the Fourteenth Amendment of the U.S. Constitution.

10
11
Ground Nine: Chith's trial attorney renedered [sic] Constitutionally deficient representation when he failed to argue that McFarland may provide a sentencing court discretion to order concurrent sentences for firearm enhancements in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution.

12
Dkt. 31 at 17-26.

13
## STANDARD OF REVIEW

14
15
16
17
18
19
20
21
22
Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

23
24

1    Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because

2    that court concludes in its independent judgment that the relevant state-court decision applied

3    clearly established federal law erroneously or incorrectly. Rather, that application must also be

4    unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable

5    application of Supreme Court precedent occurs "if the state court identifies the correct governing

6    legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state

7    prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an

8    unreasonable application of Supreme Court precedent "'if the state court either unreasonably

9    extends a legal principle from [Supreme Court] precedent to a new context where it should not

10    apply or unreasonably refuses to extend that principle to a new context where it should apply.'"

11    *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (*quoting Williams*, 529 U.S. at 407).

12    The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts

13    to presume the correctness of state courts' factual findings unless applicants rebut this presumption

14    with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court

15    decisions under §2254(d)(1) is "limited to the record that was before the state court that

16    adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

17    <u>EVIDENTIARY HEARING</u>

18    The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro*

19    *v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

20    could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

21    the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under

22    28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*,

23    563 U.S. at 180. A hearing is not required if the allegations would not entitle Petitioner to relief

24

under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 563 U.S. at 186.

The Court finds it is not necessary to hold an evidentiary hearing in this case because Petitioner's claims may be resolved on the existing state court record.

DISCUSSION

I.    Firearm Sentencing Enhancements (Ground Eight)

In Petitioner's ground eight he claims the sentencing court erred in failing to address imposition of concurrent firearm enhancements, in violation of the Fourteenth Amendment of the U.S. Constitution. Dkt. 31 at 23-36. Respondent contends Petitioner's eighth ground for relief is unexhausted because Petitioner did not allege any violations of federal law when he presented it to the Washington Supreme Court, and since he can no longer go back and exhaust it due to state procedural rules, it is also procedurally defaulted. Dkt. 32 at 9, 30-33. Since Petitioner also allegedly fails to meet the exceptions to procedural default, Respondent argues this Court should dismiss ground eight without reaching the merits. *Id.*

a.    Exhaustion

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

According to Respondent, Petitioner failed to properly exhaust ground eight because he did not fairly present the claim to the Washington Supreme Court as a federal claim. Instead,  he presented the claim as an issue of state law, citing only to statutes and state case law. Dkt. 32 at 30-33. In support of ground eight, Petitioner also only cites to state law and did not file a traverse to Respondent's answer. Dkt. 31 at 23-26; *See* docket. This Court concurs with Respondent, and consequently finds Petitioner failed to exhaust ground eight.

    b.   Procedural Default

A claim is procedurally defaulted where the petitioner failed to present the claim to the state court, and the state courts would now find the claim to be barred under state law if the petitioner attempted to go back and present it now. *Coleman v. Thompson*, 501 U.S. 735 n.1 (1991).

Washington state imposes a one-year statute of limitations on personal restraint petitions. RCW 10.73.090. Washington law also prohibits a petitioner from filing multiple collateral challenges to a judgment and sentence. RCW 10.73.140; RAP 16.4(d); *see also Shumway v. Payne*, 223 F.3d 982, 988 n. 22 (9th Cir. 2000) (finding RCW 10.73.090 to be an independent and adequate state law barring federal habeas review). Thus, if Petitioner attempted to present a new personal restraint petition at this time, the state court would find the claim time barred since more than one year has passed since Washington Supreme Court issued the mandate in Petitioner's case, and successive challenges are prohibited. *See* Dkt. 33-1 at 634. Consequently, this Court finds Petitioner's ground eight is procedurally defaulted.

Nevertheless, procedural default can be excused to permit the Court to review the merits of an otherwise procedurally defaulted ground for relief if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750).

To establish "cause," a petitioner must show some objective factor external to the defense prevented him from complying with the state's procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Here, Petitioner fails to show some objective factor external to his defense prevented him from complying with the State's procedural bar rule. Petitioner also fails to show the alleged trial errors worked to his actual and substantial disadvantage, infecting his entire trial with errors of

constitutional dimensions. Therefore, the Court finds Petitioner has not shown cause and prejudice.

In the absence of cause and prejudice, the Court may consider the merits of a defaulted claim in an extraordinary case where the error resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Wood v. Hall,* 130 F.3d 373, 379 (9th Cir. 1997). To show "actual innocence," the petitioner must demonstrate more than the existence of a reasonable doubt of guilt. *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Wood*, 130 F.3d at 379. The petitioner must show it is more likely than not that no reasonable juror would have convicted him in light of new evidence. *Schlup*, 513 U.S. at 327. "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

Here, Petitioner does not present any new evidence, or even argue that he is actually innocent of the crimes for which he is currently incarcerated. *See* Dkt. 31 at 23-26. Thus, the Court finds Petitioner has not shown he is actually innocent of the current convictions and that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt.

In sum, Petitioner has not overcome procedural default and the Court recommends the Petition be denied as to ground eight.

II.    Prosecutorial Misconduct (Grounds One, Two, Three, and Four)

In Petitioner's first four grounds for relief he alleges the prosecutor violated his constitutional rights by doing the following things during closing argument: using Petitioner's booking photo, vouching for a witness, stating Petitioner was guilty, and explaining reasonable double like an incomplete puzzle where pieces are missing by the image is discernable. Dkt. 31 at 17-20. Respondent maintains the state court adjudication was not an unreasonable application of Supreme Court precedent. Dkt. 32 at 18-19.

The Washington Court of Appeals determined Petitioner failed to show the prosecutor's conduct was improper:

> First, the PowerPoint slides in Chith's case are unlike those held to constitute prosecutorial misconduct in *In re Personal Restraint of Glassman*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012), and *State v. Walker*, 182 Wn.2d 463, 478, 34 P.3d 979 (2015) In those cases, the PowerPoint slides superimposed or juxtaposed the defendant's booking photos with emphatic expressions of the defendant's guilt. Here, only one slide contained a booking photo, and it was used to argue that a witness's description of Chith was accurate. The expressions of the State's belief that it had proved Chith guilty were not superimposed or juxtaposed with the photo. And those expressions of guilt were used to summarize how the State believed it had proved its case. They were not expressions of the prosecutor's personal belief in Chith's guilt and so were not prosecutorial misconduct under *State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984).
>
> Second, Chith argues that the prosecutor impermissibly vouched for the State's witnesses during closing arguments. But the instances he cites are inferences from the witnesses' testimony, not the prosecutor's personal opinions as to the veracity or credibility of the witnesses, and so do not constitute impermissible vouching under *State v. McKenzie,* 157 Wn.2d 44, 53-54, 134 P.3d 221 (2006).
>
> Finally, the puzzle analogy used by the prosecutor in Chith's case did not trivialize the State's burden under the reasonable doubt standard and therefore was not improper *State v. Berube*, 171 Wn. App. 103, 122, 286 P.3d 402 (2012). Nor did it quantify the burden of proof, in violation of *State v. Lindsay,* 180 Wn.2d 423, 436, 326 P.3d 125 (2014).
>
> Chith fails to demonstrate any instances of prosecutorial misconduct, making his petition frivolous ….

Dkt. 9-1 at 60-61. The Washington Supreme Court concurred, finding:

> Mr. Chith argues that the prosecutor improperly used his booking photo in a slide presentation during closing arguments, impermissibly vouched for witnesses and declared Mr. Chith guilty, and trivialized the State's burden of proof by use of a puzzle analogy. The slideshow included a slide quoting a 911 call and witness description of the driver: "Black," "Islander," "Samoan," "1/2 Black 1/2 White," "Darker Complexion," "Might have been Pacific Islander," along with the description that the man was in his early to mid-20s and had longish black hair, and that he had a scruffy face. Pet. Ex. 5, at 2. The slide also featured side-by-side booking photos of Mr. Chith and his clean shaven confederate. The prosecutor pointed out Mr. Chith's facial hair as consistent with the witness description.



The slide showed Mr. Chith and the other man wearing inmate garb. Other slides in the presentation include the conclusion that Mr. Chith is "guilty" of various crimes because he was the driver. Mr. Chith did not object at trial to the slide with the booking photograph but objected only to one of the last slides in the presentation.

To obtain postconviction relief generally on this ground, Mr. Chith must show that he was actually and substantially prejudiced by constitutional error or that his trial suffered from a nonconstitutional error that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). Because Mr. Chith did not object to the slide, he waived any objection unless he can show that the prosecutor's misconduct was so flagrant and ill-intentioned that a curative instruction would have been ineffective. *See State v. Belgarde*, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988). He contends that he suffered from prosecutorial misconduct like that found in *In re Personal Restraint of Glasmann*, 175 Wn.2d 696, 286 P.3d 673 (2012).

In *Glasmann*, the prosecutor in closing argument displayed multiple slides featuring a booking photograph that displayed a bloodied and bruised defendant, then superimposed over the booking photograph words such as "DO YOU BELIEVE HIM?" and "GUILTY" forming a red "X" across the defendant's face. *Id.* 701-02. The prosecutor added his personal assertions of the defendant's guilt and told jurors they could not acquit the defendant unless they believed him. *Id.* at 710. This court held that the prosecutor's improper closing argument as a whole prejudiced the defendant and remanded for a new trial. *Id.* at 714.

Here, the prosecutor displayed a booking photograph of Mr. Chith in prison garb, but the photograph did not portray Mr. Chith bloodied and bruised as the petitioner in *Glasmann*. Although it is troubling that the slide, viewed out of context, includes references to race, it was not suggesting the jury find guilt based on Mr. Chith's

race. Rather, the slide appears to have been intended to demonstrate that Mr. Chith, as he appeared then, matched the witness's description from the 911 call.

This is not to say that the use of the slide was appropriate. In recent years this court has been presented with numerous cases where the State utilized booking photographs in a questionable manner as part of a slide presentation. Unnecessarily subjecting jurors to viewing a defendant in prison garb risks upending the presumption of innocence. *See Estelle v. Williams*, 425 U.S. 501, 504-05, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). The State should be able to make its point without relying on a photograph of the defendant in prison garb and then exacerbating matters by featuring the photograph in a slide presentation. But here, Mr. Chith failed to object to the photograph and does not meet his high burden of showing that a curative instruction would have been futile. The acting chief judge correctly ruled that the slide presentation used here is distinguishable from *Glasmann*, and Mr. Chith cannot show the conflict of precedent required to merit review under RAP 13.4(b)(1).

Mr. Chith also contends that the prosecutor improperly vouched for witnesses. To establish reversible prosecutorial misconduct, the defendant must show the existence of misconduct and prejudice. *State v. Ish*, 170 Wn.2d 189, 195, 241 P.3d 389 (2010). Improper vouching occurs if the prosecutor expresses a personal belief as to the veracity of the witness or indicates that evidence not presented at trial supports the witness's testimony. *Id*. at 196. Eliciting testimony that a witness was speaking the truth or living up to the terms of a plea agreement may amount to vouching, particularly if the evidence is admitted as part of the State's case in chief. *Id*. at 197-98.

Here, Mr. Chith highlights two statements. First, the prosecutor argued that its key witness's identification of Mr. Chith was reliable, and that it remained reliable even though nine months had passed. And referring to Mr. Chith's girlfriend's testimony, the prosecutor suggests that the jury knows it was truthful because it corroborated the eyewitness testimony. Mr. Chith also emphasizes that the prosecutor in closing argument referred to him as guilty more than a dozen times. The acting chief judge ruled that these statements were inferences from the witness's testimony and not personal opinions as to the veracity or credibility of the witnesses, citing *State v. McKenzie*, 157 Wn.2d 44, 53-54, 134 P.3d 221 (2006). And Mr. Chith fails to establish any conflict of authority suggesting that the acting chief judge's ruling merits review under RAP 13.4(b). Moreover, Mr. Chith takes these comments out of context. Reviewing the closing arguments as a whole, it is clear that the prosecutor was providing the jury with evidence and circumstances supporting a jury finding that the State's witnesses were credible, not stating a personal opinion.

Finally, Mr. Chith contends that the prosecutor improperly used a puzzle analogy. The prosecutor attempted to describe to jurors the beyond a reasonable doubt standard, analogizing it to knowing the picture portrayed by an incomplete puzzle. The prosecutor noted that some pieces of the jigsaw puzzle may be missing, perhaps

more than 50 percent, but that fact did not mean that the jury could not know beyond a reasonable doubt what was represented by the puzzle. Pet. Ex. 4 at 830. Again, this is a high risk argument for prosecutors. In *State v. Lindsay*, 180 Wn.2d 423, 436, 326 P.3d 125 (2014), this court explained that the "quantifying of the standard of proof by means of this jigsaw puzzle analogy is improper." The prosecutor in *Lindsay* used the same type of language. *Id*. Although the State here contends that the prosecutor's language did not quantify the burden of proof, it used the same "less than 50 percent of the puzzle" statement. But Mr. Chith did not object, and here, unlike Lindsay, Mr. Chith must demonstrate actual and substantial prejudice. In these circumstances, Mr. Chith has not met his burden of demonstrating such prejudice.

Nonetheless, prosecutors should know better than to use such photographs and such inapt analogies. Perhaps this is an example of a trial that occurred before the implementation of any changes in policy in response to recent case law. But it is wearying to see multiple such examples come before the court, and I encourage the State to take corrective action to stop such misconduct in the future. The fact that appellate courts frequently find no reversible error in such cases should not be taken as a license to continue to make improper closing arguments.

Dkt. 9-1 at 86-90.

When analyzing prosecutorial misconduct, the relevant inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). A trial error is presumed to be harmless unless the error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). It is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

Improprieties or breaches of courtroom decorum are not enough. *Darden*, 477 U.S. at 181. The question is not whether the prosecutor acted improperly, but whether he acted so improperly that, through the narrow lens of due process, the petitioner was denied a fair trial. *Id*. Further, a prosecutor's conduct must be viewed in context to determine its probable effect on the

1    jury's ability to fairly decide the case. *United States v. Young*, 470 U.S. 1, 11-12 (1985). Closing

2    arguments are not evidence, and ordinarily carry less weight with the jury than the court's

3    instructions. *Boyde v. California*, 494 U.S. 370, 384 (1990); *Houston v. Roe*, 177 F.3d 901, 909

4    (9th Cir. 1999). Prosecutorial argument should not result in reversal where the trial court

5    instructed the jury that its decision is to be based solely upon the evidence, where the defense did

6    not object, where the comments were an "invited response," or where there is overwhelming

7    evidence of guilt. *Darden*, 477 U.S. at 182; *Donnelly*, 416 U.S. at 640-45; *Jeffries v. Blodgett*, 5

8    F.3d 1180, 1191 (9th Cir. 1993); *Hall v. Whitley*, 935 F.2d 164, 165-66 (9th Cir. 1991).

9            Turning to ground one, Petitioner has not established the prosecutor's use of his booking

10   photo in closing argument—employed to establish consistency between Petitioner's appearance

11   on the day in question and the description of the state's key eye witness to 911 during the heat of

12   the moment, as he was witnessing Petitioner in action—created a "substantial and injurious

13   effect" on the jury's verdict in his case. *Brecht*, 507 U.S. at 637. Citing *Estelle v. Williams*,  425

14   U.S. 501 (1976), Petitioner argues using the booking photo is akin to being forced to stand trial

15   in prison clothing. Dkt. 31 at 17-18. Yet, the Supreme Court in *Estelle* held that defense

16   counsel's failure to object to his client standing trial in his prison clothing negated the

17   presumption that he was compelled to do so. *Id*. at 512. Similarly, the state court found defense

18   counsel's failure to object to use of Petitioner booking photo constituted waiver, and Petitioner

19   could not show a curative instruction would be futile. Exhibit 25 at 2-6. This was not contrary to,

20   or an unreasonable application of, clearly established federal law, or an unreasonable

21   determination of the facts in light of the evidence presented at trial. Accordingly, the Court

22   recommends the Petition be denied as to ground one.

23

24

1    Next, in ground two Petitioner argues that in closing argument the prosecutor vouched for

2    Petitioner's ex-girlfriend, who was in the car with Petitioner during the commission of the crimes

3    he was on trial for committing, in violation of *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

4    Dkt. 31 at 18. This Court has reviewed the prosecutor's entire closing argument, including his

5    comments regarding Ms. Laplante,[1] and finds the state court record does not support Petitioner's

6

7    [1]    In his closing argument the prosecutor stated, in relevant part:

8    "Everything Ms. Laplante told Deputy Oetting corroborates Mr. Colbern's identification, and the
     beauty of that is that they don't know each other. They don't have time to get together and form a

9    story that points at the defendant. What did Ms. Laplante tell Deputy Oetting on February 5th? And
     what's important is the fact that she said it on February 5th, not that she got up on the stand and said

10   something different. The reason why she told on the defendant on February 5th – we all understand
     why – she was angry. She was made at him for hitting her, for head-butting her. She was mad at

11   him for getting her into this world of trouble where she was arrested in the back seat of a patrol car;
     and when our loved ones get us in that kind of trouble, when they hurt us; what are we prone to do?

12   We're prone to stop protecting them. We're prone to tell on them, and that's what Ms. Laplante did.
     She certainly regrets it now. She's had time to – for feelings to fade, and now she's back to loving

13   him and protecting him; and so that's why she tells you what she told you on the stand; but what did
     she tell Deputy Oetting on February 5th? Everything she tells Deputy Oetting, bear in mind, is

14   corroborated by other evidence. She tells Deputy Oetting that they were headed to court. You know
     that to be true or to be correct because the court records establish that fact. She tells Deputy Oetting

15   that the defendant had been driving the other car. That statement is corroborated by Mr. Colbern
     who identifies him as the driver, by Mr. Chum and Ms. Shoemaker who also say that he was the

16   driver of the Honda Civic. She tells Deputy Oetting that they got the silver Honda after they were
     dropped off at the mall. You know that to be correct, and that's corroborated by the location where

17   the car was stolen. It would be one thing if she said, we got the car after we were dropped off in
     Seattle; we got the car after we were dropped off at the Tacoma Dome in Tacoma. You kind of look;
     and you think, well, then, how did you get the car when it was so far away? But you know that what

18   she told Deputy Oetting about getting in the car, the silver Honda after being dropped off at the mall,
     that's corroborated by the location where the car was stolen. Here's A, where Mr. Rapozo's car was.

19   Here's the mall, and there's the walk he took to get Mr. Rapozo's car, not a long walk; so when she
     tells Deputy Oetting that we got the car after being dropped off at the mall, that's corroborated by
     the location where the car was stolen. This is important. Deputy Oetting asked, How did he steal the

20   car? How did the defendant steal the car? What's her response? It's not, oh, he didn't steal the car.
     It's: I don't know. I don't know how he stole it. The implication in that response is: I don't know
     how he stole it; but he did steal it because if he wasn't the one who stole it, she would have said, oh,
     he didn't steal the car.

21   Ms. Laplante tells Deputy Oetting, We argued about missing court; He got out of the car and was
     yelling; He got back in the car; he grabbed me by the coat and head-butted me. This is corroborated

22   by court records and Mr. Colbern. You know that they missed their court date, according to the court
     records; and Ms. Laplante's description of what happened is corroborated by Mr. Colbern. When

23   Ms. Laplante tells Deputy Oetting that the defendant got out of the car and was yelling, you know
     what that's corroborated by? Mr. Colbern telling you that the defendant was stopped on Meridian at
     an intersection and inexplicably was out of the car, yelling. What Mr. Colbern saw corroborates

24   what Ms. Laplante told the Deputy. Ms. Laplante says to Deputy Oetting that a friend picked us up

1   argument that the prosecutor vouched for Ms. Laplante. In fact, the Court's review of the entirety

2   of the closing arguments clearly shows the prosecutor was connecting the evidence to

3   corroborate the State's witnesses, not stating a personal opinion. *See e.g., U.S. v. Weatherspoon*,

4   410 F.3d 1142, 1146 (9th Cir. 2005) (*citing United States v. Necoechea*, 986 F.2d 1273, 1276

5   (9th Cir.1993)("Vouching consists of placing the prestige of the government behind a witness

6   through personal assurances of the witness's veracity, or suggesting that information not

7   presented to the jury supports the witness's testimony.")). Therefore, the state court's rejection of

8   this claim was not contrary to, or an unreasonable application of, clearly established federal law,

9   or an unreasonable determination of the facts in light of the evidence presented at trial.

10  Accordingly, the Court recommends the Petition be denied as to ground two.

11       Next, in ground three Petitioner claims the prosecutor deprived him of a fair trial in

12  contravention of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, by

13  repeatedly stating during closing argument that Petitioner was guilty. Dkt. 31 at 19. Here again,

14  Petitioner mischaracterizes the context and content of the prosecutor's statements. As the state

15  court determined, the prosecutor showed Power Point slides listing each crime the state sought to

16  prove Petitioner committed, and reminded the jury of the evidence and circumstances supporting

17  a finding of guilty. Dkt. 31 at 81-90. At no point did the prosecutor state that in his personal

18  opinion Petitioner was guilty. Therefore, the state court's rejection of this claim was not contrary

19

20

21  at the Starbucks. That's corroborated by Ms. Shoemaker who tells you that we picked them up at a coffee house. You have Ms. Laplante telling Deputy Oetting that we took the tires off the car; and that is, of course, corroborated by Mr. Chum who says he told Ms. Laplante to throw the tires out

22  of the car, by Mr. Reynolds who says he saw tires being discarded as they were fleeing the scene, and, of course, the officers who recovered the tires. Everything that Ms. Laplante said to Deputy Oetting on February 5th is corroborated by other evidence, and that's how you it's true; and when

23  you know what Ms. Laplante is saying is the truth, that corroborates what Mr. Colbern says about the identification of the defendant." Dkt 31 at 69-72.

24

1  to, or an unreasonable application of, clearly established federal law, or an unreasonable

2  determination of the facts in light of the evidence presented at trial. Accordingly, the Court

3  recommends the Petition be denied as to ground three.

4    Finally, in ground four Petitioner argues the state's use of a "puzzle analogy" during

5  rebuttal closing argument trivialized the state's burden of proof in violation of rights guaranteed

6  him by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution. Dkt. 31 at 20. The

7  prosecutor stated:

> Think about it in the context that makes sense, to me, which is a puzzle. Evidence
> are (sic) like the pieces of a puzzle. You put together these pieces, and they start to
> form an image. At some point, you know beyond a reasonable doubt what that
> image is. It may be when you got half the puzzle together. It may be when you got
> the puzzle all together. You may be missing only one or two pieces. You may be
> missing several pieces; but at some point, you know what that image is; and just
> because there are additional puzzle pieces out there that could be put in, just because
> there are additional pieces of evidence that could be presented to you, doesn't mean
> that you aren't convinced beyond a reasonable doubt of what the image is in that
> puzzle, likewise, here.

Dkt. 9-1 at 554-555. While the state court noted that puzzle analogies are disfavored under state

law, Respondent is correct that the United States Supreme Court has never found this rhetorical

device violative of due process. Also, Petitioner has not cited any federal law in support of this

proposition. As such, the state court's rejection of this claim was not contrary to, or an

unreasonable application of, clearly established federal law, or an unreasonable determination of

the facts in light of the evidence presented at trial. *See Yarborough v. Gentry*, 540 U.S. 1, 666

(2003)("Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly

established under the guise of extensions to existing law."). Accordingly, the Court recommends

the Petition be denied as to ground four.

*///*

*///*

1    III.    Insufficient Evidence (Grounds Five, Six, and Seven)

2         In grounds five, six, and seven, Petitioner alleges the prosecutor violated his

3 constitutional rights because: the state did not have sufficient evidence to prove Second Degree

4 Assault, Second Degree Unlawful Possession of a Firearm, or the Firearm Enhancement. Dkt. 31

5 at 20-23. Respondent responds that Petitioner cannot overcome the "doubly deferential" standard

6 of review this Court applies to insufficient evidence claims. Dkt. 32 at 21.

7         The Washington Supreme Court rejected Petitioner's claims of insufficient evidence

8 relating to grounds five and six, stating:

> Mr. Chith's first two claims challenge the sufficiency of the State's evidence. Such claims are reviewed while viewing the evidence in the light most favorable to the State, and the evidence is sufficient where any rational juror could have found each element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In applying this standard, the court considers all reasonable inferences from the evidence in favor of the State. *State v. Myles,* 127 Wn.2d 807, 816, 903 P.2d 979 (1995). The reviewing court must defer to the jury's determination of witness credibility, and the testimony of one credible witness can be sufficient to support the conviction. *State v. Carver,* 113 Wn.2d 591, 604, 781 P.2d 1308 (1989), 789 P.2d 306 (1990); *State v. Galbreath,* 69 Wn.2d 664, 419 P.2d 800 (1966).
>
> Mr. Chith argues that the evidence did not support the second degree assault conviction because it did not show that Mr. Chith pointed a deadly weapon in a way that created fear and apprehension in the victim. As charged in this case, a person commits second degree assault if, under circumstances not amounting to first degree assault, the person assaults another with a deadly weapon. RCW 9A.36.021(l)(c). Washington recognizes three common law definitions of assault: (1) unlawful touching (battery); (2) attempted infliction of bodily injury by unlawful force, tending but failing to accomplish it (attempted battery); and (3) putting another person in apprehension of harm. *State v. Elmi,* 166 Wn.2d 209, 215, 207 P.3d 439 (2009). Here, the jury was instructed as to all of these forms of assault. Clerk's Papers at 105-08. The trial evidence showed that Mr. Chith fired five shots from a firearm at the victim, and the victim testified that he was momentarily in fear and apprehension. Mr. Chith points to the victim's testimony that he soon felt no fear, but viewing the evidence in the light most favorable to the State, there was sufficient evidence to support a finding that the five shots caused fear and apprehension, however brief. Based on the testimony, a reasonable juror could have concluded that the victim was in fear after the first shot and maintained that fear through the next five shots before realizing that he was no longer in danger.

1

Accordingly, the State presented sufficient evidence to support this conviction.

2

3

4

Mr. Chith also argues that the State failed to prove him guilty of second degree unlawful possession of a firearm because it could not prove possession of an operable firearm given that police failed to recover any firearm. This argument fails because the victim testified that he saw Mr. Chith firing the weapon, a reasonable inference from which is that Mr. Chith possessed an operable firearm while shooting it.

5

6

Dkt. 33-1 at 611-612. The Washington Supreme Court also denied Petitioner's Firearm

7

Enhancement claim under ground seven, stating:

8

9

10

Finally, Mr. Chith argues that firearm sentencing enhancements are invalid because they were improperly instructed on and were not sufficiently proven based on his preferred instruction. As to the instruction, he proposes that the jury instruction must require the jury to find specifically that the gun was real and operable and not a toy. But the jury was instructed based on the statutory definition of a firearm, and in any event Mr. Chith demonstrates no actual and substantial prejudice given the evidence that he actually fired five shots from a real firearm.

11

12

*Id.* at 612-613.

13

14

15

16

The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 419). The jury is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992).

17

18

19

20

21

22

In support of ground five, Petitioner argues:

23

24

… the evidence did no[t] support the second degree assault conviction because it

1     did not show that Mr. Chith pointed a deadly weapon in a way that created fear and
    apprehension in the victim. While the victim testified that he seen (sic) a gun and
2     heard shots, he also stated that he felt no fear. Taking this evidence as true under
    insufficiency of evidence standards, at most it shows that there was an unlawful
3     discharge of a firearm or reckless endangerment but not an assault.

4 Dkt. 31 at 21. In point of fact, the victim testified that when Petitioner fired multiple shots at

5 him, he felt an adrenaline rush, however he did experience a "split second of fear". Dkt. 9-2 at

6 22-23. Moreover, Jury Instruction Number 13 defined "assault" in three different ways,

7 including as, "an act done with the intent to create in another apprehension and fear of bodily

8 injury, and which in fact creates in another a reasonable apprehension and imminent fear of

9 bodily injury even though the actor did not actually intend to inflict bodily injury." Dkt. 9. at

10 533.

11       Viewing this evidence in the light most favorable to the prosecution, a rational jury could

12 have found the essential elements of the crime of Assault in the Second Degree, as defined,

13 *supra*. Accordingly, this Court finds that the state court's rejection of this argument was not

14 contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable

15 determination of the facts in light of the evidence presented at trial. Consequently, the Court

16 recommends the Petition be denied as to ground five.

17       Next, under ground six Petitioner argues the prosecutor failed to prove "every element of

18 second degree unlawful possession of a firearm" because the police never recovered a firearm so

19 the victim's testimony was insufficient to prove Petitioner possessed "a weapon or device from

20 which a projectile or projectiles may be fired by an explosive such as gunpowder" as required by

21 (RCW 9.41.010(9)). Dkt. 31 at 21-22. This argument is unpersuasive, as the victim testified he is

22 a gunowner and could identify Petitioner's weapon as a small caliber pistol based on the sound it

23 made when Petitioner shot at him. Dkt. 9-2 at 12-14.

24

1    Viewing this evidence in the light most favorable to the prosecution, a rational jury could

2    have found the essential elements of the crime of Second Degree Unlawful Possession of a

3    Firearm. Accordingly, this Court finds that the state court's rejection of this argument was not

4    contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable

5    determination of the facts in light of the evidence presented at trial. Consequently, the Court

6    recommends the Petition be denied as to ground six.

7    Finally, in ground seven Petitioner argues that all firearm "enhancements" were obtained

8    in violation of his right to due process because "the jury instructions did not specify that a real

9    firearm, rather than a toy or a replica must be used…[which] lowered the State's burden of proof

10    that the device used was capable of firing a projectile by use of an explosive such as

11    gunpowder." Dkt. 31 at 23.

12    "[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for

13    habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). In a habeas case, the question before

14    the Court is "whether the ailing [jury] instruction by itself so infected the entire trial that the

15    resulting conviction violates due process." *Id*. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147

16    (1973)). "Where, for example, a jury instruction relieves the prosecution of its burden in proving

17    every element of the offense beyond a reasonable doubt, the jury instruction violates due process."

18    *Roettgen v. Ryan*, 639 F. Supp. 2d 1053, 1066 (C.D. Cal. 2009) (citing *Middleton v. McNeil,* 541

19    U.S. 433, 437 (2004)). If the Court is reviewing an ambiguous instruction, the inquiry is "'whether

20    there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that

21    violates the Constitution." *Id*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). The

22    challenged jury instruction "must be considered in the context of the instructions as a whole and

23    the trial record." *Estelle*, 502 U.S. at 72.

24

1    Having reviewed all of the jury instructions used at Petitioner's trial, the Court finds no

2  reasonable likelihood that the jury concluded the device Petitioner used to fire shots at the victim

3  was anything other than a real firearm. Jury Instruction number 15, for instance, stated "A

4  firearm, whether loaded or unloaded, is a deadly weapon." Dkt. 9 at 535. And Jury Instruction

5  number 16 stated, "A 'firearm' is a weapon or device from which a projectile may be fired by an

6  explosive such as gunpowder." *Id*. at 536. In light of the jury instructions "as a whole" this Court

7  concludes that Petitioner was not actually and substantially prejudiced by the absence of an

8  instruction that the firearm must not be a toy or a replica. Accordingly, this Court finds that the

9  state court's rejection of this argument was not contrary to, or an unreasonable application of,

10  clearly established federal law, or an unreasonable determination of the facts in light of the

11  evidence presented at trial. Thus, the Court recommends the Petition be denied as to ground

12  seven.

13    IV.    Ineffective Assistance of Counsel (Ground Nine)

14    In ground nine Petitioner claims his defense counsel provided ineffective assistance, in

15  violation of his Sixth and Fourteenth Amendment rights to the U.S. Constitution, by failing to

16  argue at his resentencing hearing that the court had discretion to order concurrent sentences on

17  the firearm sentencing enhancement. Dkt. 31 at 26-28. Respondent points out that the

18  Washington Court of Appeals rejected Petitioner's underlying claim—that the trial court had

19  discretion to impose concurrent, rather than consecutive, firearm sentencing enhancements—

20  before also rejecting his ineffective assistance claim. Dkt. 32 at 25-30. The Washington Court of

21  Appeals stated:

22    RCW 9.94A.533(3) [footnote omitted] governs adjustments to standard sentences
    relating to firearm enhancements. It provides,

23

24

> The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for one of the crimes listed in this subsection as eligible for any firearm enhancements based on the classification of the completed felony crime. If the offender is being sentenced for more than one offense, the firearm enhancement or enhancements must be added to the total period of confinement for all offenses, regardless of which underlying offense is subject to a firearm enhancement.

RCW 9.94A.533(3).

RCW 9.94A.533(3)(e) further provides,

> Notwithstanding any other provisions of law, all firearm enhancements under this section are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements, for all offenses sentenced under this chapter.

In *State v. Brown*, our Supreme Court addressed "whether a sentencing court could impose an exceptional sentence downward below the time specified under [former] RCW 9.94A.310(4) [1996] for a deadly weapon enhancement." 139 Wn.2d 20, 22, 983 P.2d 608 (1999), *overruled in part on other grounds by State v. Houston Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017). Former RCW 9.94A.310(4)(e) provided,

> Notwithstanding any other provision of law, any and all deadly weapon enhancements under this section are mandatory, shall be served in total confinement, and shall not run concurrently with any other sentencing provisions.

Former RCW 9.94A.310(4)(e) was subsequently recodified as former RCW 9.94A.510(4)(e) (2002) and is currently codified as RCW 9.94A.533(3)(e). LAWS OF 2001, ch. 10 § 6; LAWS OF 2002, ch. 290 § 10.

The *Brown* court held that the "absolute language" of the statute deprived the sentencing court of discretion to impose an exceptional sentence regarding such enhancements. 139 Wn.2d at 29. The court reasoned as follows:

> While Brown's arguments foster preservation of judicial discretion in sentencing, [former] RCW 9.94A.310(4)(e) clearly provides that an offender's sentence cannot be reduced below the times specified in [former] RCW 9.94A.310(4)(b). If [former] RCW 9.94A.310(4)(e) is to have any substance, it must mean that courts

may not deviate from the term of confinement required by the deadly weapon enhancement. *Id*.

Although our legislature has amended the enhancement statutes several times, it has not amended the relevant statutory language since *Brown* was decided 20 years ago. "'[T]his court presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision.'" *State v. Otton*, 185 Wn.2d 673, 685-86, 374 P.3d 1108 (2016) (*quoting City of Federal Way v. Koenig*, 167 Wn.2d 341, 348, 217 P.3d 1172 (2009)).

Relying on *McFarland* and *Mulholland*, Chith argues that the sentencing court has discretion to depart from mandatory consecutive firearm enhancement sentences despite the statutory language requiring consecutive sentences. This argument is not persuasive.

In *Mulholland*, our Supreme Court held that the plain language of RCW 9.94A.535 and .589 authorizes concurrent exceptional sentences to be imposed for multiple serious violent offenses when the court identifies substantial and compelling reasons to do so, even though RCW 9.94A.589(1)(b) states that sentences for such crimes must be consecutive. 161 Wn.2d at 329-30. In *McFarland*, our Supreme Court similarly held that RCW 9.94A.535 and .589(1)(c) permit the sentencing court to impose exceptional concurrent sentences for firearms-related convictions. 189 Wn.2d at 54-55.

But neither *Mulholland* nor *McFarland* addresses firearm sentencing enhancements and nothing in either of these cases overrules or undermines *Brown*. In fact, in *McFarland*, the court expressly distinguished firearm sentencing enhancements from sentences for firearm-related convictions, noting that the primary purpose of RCW 9.94A.533 was to ensure that enhancements were served consecutively. *McFarland*, 189 Wn.2d at 55 (*citing State v. Conover*, 183 Wn.2d 706, 714, 355 P.3d 1093 (2015)). The fact *Mulholland* or *McFarland* do not undermine *Brown* and *McFarland* distinguishes sentencing enhancements from firearm-related convictions shows that *Mulholland* and *McFarland* do not apply to firearm sentencing enhancements.

Thus, the sentencing court did not err when it refused to impose concurrent firearm enhancement sentences. Accordingly, this argument fails.

Dkt. 33-1 at 297-300. The Washington Court of Appeals then rejected Petitioner's ineffective assistance claim, stating:

Chith also argues that he was deprived of effective assistance of counsel because defense counsel failed to argue that *McFarland* gave the sentencing court discretion to impose concurrent firearm enhancements. We disagree.

1

2

3

4

5

6

> The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). An appellant claiming ineffective assistance of counsel bears the burden of establishing that (1) counsel's performance was deficient and (2) the deficient performance resulted in prejudice. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Defense counsel's representation is deficient if it falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (*quoting Strickland*, 466 U.S. at 688).

7

8

9

> Chith cannot show either deficient performance or prejudice because, as discussed above, the argument that the sentencing court had discretion to run the firearm sentencing enhancements concurrently would not likely have succeeded. *State v. Brown,* 159 Wn. App. 1, 17, 248 P.3d 518 (2010).

10

11

> Additionally, Chith cannot establish prejudice because the sentencing court allowed him to present argument on this issue and Chith does not show that counsel's argument would have been any more effective. Accordingly, Chith's ineffective assistance of counsel argument fails.

12   Dkt. 33-1 at 300-301.

13       In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court created a two part

14   test for determining whether a defendant received ineffective assistance of counsel. First, a

15   defendant must demonstrate his attorney's performance was deficient, which requires showing

16   "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by

17   the Sixth Amendment." *Id*. at 687. Second, a defendant must demonstrate the deficient

18   performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id*.

19       Under the prejudice prong, a petitioner must establish there is a reasonable probability the

20   results would have been different but for counsel's deficient performance. *Kimmelman v.*

21   *Morrison*, 477 U.S. 365, 375 (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a

22   probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[A]

23   court need not determine whether counsel's performance was deficient before examining the

24

1  prejudice suffered by the defendant as a result of the alleged deficiencies … If it is easier to

2  dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course

3  should be followed." *Id*. at 697.

4        Here, Petitioner cannot prove prejudice where the argument he claims defense counsel

5  should have made would not likely have succeeded given state law clearly requires all deadly

6  weapon enhancements to run consecutive to any other sentences. Accordingly, this Court finds

7  the state court's rejection of this argument was not contrary to, or an unreasonable application of,

8  clearly established federal law, or an unreasonable determination of the facts in light of the

9  evidence presented at trial. Thus, the Court recommends the Petition be denied as to ground nine.

10  <u>CONCLUSION</u>

11        The Court recommends the Amended Petition (Dkt. 31) be denied with prejudice.

12        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

13  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

14  6. Failure to file objections will result in a waiver of those objections for purposes of de novo

15  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

16  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

17  September 24, 2021, as noted in the caption.

18        Dated this 8th day of September, 2021.

19

20  David W. Christel

21  United States Magistrate Judge

22

23

24